## BELKNAP & a. v. WENDELL, PLAINTIFF IN REVIEW.

By the Revised Statutes, the condition of a mortgage of personal property must state its true character as security for a debt, or, if it is such, for a liability only, or it will not be valid against creditors.

A note for a given sum may be valid as an indemnity for a contingent liability, but if a mortgage of personal property is given to secure such note, the true character of the note as an indemnity must be stated in the condition. If stated as a debt in the condition and affidavit, it will be invalid as to creditors.

If the whole sum secured by a mortgage of personal property is described as a debt, when a part of it is merely an indemnity, the whole will be invalid against creditors, whether there is any fraudulent design in the misdescription or not.

A copy, certified with the other papers, of a paper used and filed upon a former trial, cannot be used as of course upon another trial. If objection is made, the original must be produced.

If a paper signed by one party is offered and used by the other party on a former trial, it is not made evidence on a second trial for the party signing it, either on the ground that it was so used, or that being an account of the amount due on a mortgage rendered under oath, the party calling for it is bound by it.

It is no objection to the admission of a paper, otherwise competent evidence, that it was used at a former trial, and, upon a review, no copy of it was certified by the clerk.

It is not peremptory ground for a nonsuit that a plaintiff who has produced the usual copies upon a review, certified to be copies of all papers used and filed upon the former trial, that a paper so used is not copied. The court may properly allow time to supply the omission.

THIS cause is a review of the action reported in 1 Foster's Rep. 175, and it was tried upon the same pleadings.

The question at the trial was whether the mortgage from John Mugridge & Co. was valid against his creditors.

There was evidence tending to show that the notes were given wholly for a debt to their full amount, then due from Mugridge to the mortgagees, Belknap, Hale and Jones.

There was also evidence tending to show that the notes were given partly for a debt and partly on account of liabilities which the company were under for him, upon certain verbal and written orders; and there was, beside, some

evidence to show that the notes were not either for a debt or liabilities to any considerable amount, but were for a mere cover, and some proof that they were intended to cover what might be due upon a final settlement of all dealings.

The court instructed the jury that the notes must have been given for a debt, then actually subsisting to the full amount of the notes, and that if but a part of the consideration of the notes was for a debt from Mugridge to the company, and one object of the notes and mortgage, as intended and understood by the parties, was to indemaify the company against liabilities which it was under as surety for said Mugridge, the mortgage was void as against his creditors, although the parties might not have had any actual design to defraud any one.

The court further instructed the jury that if Belknap, Hale and Jones, at a time when Mugridge had no funds in their hands, accepted orders drawn by him, their acceptances were for his accommodation, and they were his surety as between him and them, whatever form the transaction might have taken as to being verbal or written orders, and that such acceptances would not be a valid consideration for the notes, sufficient to uphold the mortgage, since the parties have sworn that it was given to secure a debt, and for no other purpose.

But the court also instructed the jury that if, in the case last supposed, it was, at the time the mortgage was given or before, understood and agreed between the parties that such orders, so accepted, should, as between Mugridge and Belknap, Hale and Janes, be the debt of said company, and not his debt, and so the object of the notes was not to indemnify, in whole or in part, but was simply to secure an absolute debt to the full amount of the notes, then the mortgage, if taken in good faith, would be valid.

At the former trial, Wendell gave in evidence an account which had been rendered by the mortgagees, and a copy of

this account was among the papers produced by the review-
ing party at the trial. At this trial, the plaintiff's counsel
proposed to read this copy to the jury as a part of the case,
but the counsel for Wendell objected, and the court exclu-
ded it, and the plaintiff excepted.

At the former trial, Wendell read in evidence to the jury
the disclosure of A. H. Jones, one of the plaintiffs, given in
another suit. No copy of this disclosure was produced in
court by Wendell, but his counsel, having taken the dis-
closure from the files, was proceeding to read it, when the
other side objected to the reading, on the ground that no at-
tested copy of that paper had been produced in court by the
reviewing party. The counsel for Wendell then insisted
that the objection was not valid, but moved that the case
might lie before the jury until the next morning, to enable
the clerk to write out a copy. This motion was made after
the plaintiff had rested his case, and Wendell had entered
upon the defence. The plaintiff's counsel objected to this
motion, on the ground that it was not competent for the re-
viewing party, after the trial had begun and progressed so
far, to move for delay to enable him to produce attested
copies, as required by the statute; but this objection was
overruled, and the counsel excepted to the said ruling grant-
ing time. The counsel having taken the said exception,
without waiving it, consented that the original might be
used as and for the copy.

A verdict was returned for Wendell, which the court are
asked to set aside, because of said rulings and instructions.

*W. H. Y. Hackett*, for the plaintiffs.

I. The court should have nonsuited the plaintiff in re-
view, (defendant in the action,) instead of granting his mo-
tion for delay. The party bringing any action of review
shall produce in court attested copies of the writ, pleadings,
judgment, and all papers used and filed at the former trial,
otherwise a nonsuit shall be entered. Rev. Stat. ch. 192, §

8; Comp. Stat. 494. The obvious meaning of this provision is that the copies shall be in court and accessible to the other side, at least as early as the beginning of the trial. If these copies are not then in existence when the plaintiff rests, and the defendant has begun his defence, the requirement of the statute is not complied with, and the defendant in review has acquired a right of which the court may not deprive him, of having a nonsuit entered. This is a matter in which the court have no discretion. They cannot enlarge the time within which copies may be produced in court any more than they can enlarge the time within which an action of review may be brought of right. They may not, when a trial is half through, jeopardize one party by suspending it, to enable the other party to escape the effects of his negligence, when the law says a nonsuit shall be entered. If this be not a case for a nonsuit, under the statute, what would constitute one ?

II. The account of the debt due from Mugridge to the original plaintiffs, rendered under oath to Wendell, and by him put in at the former trial and filed, was as much a part of the case as Wendell's return as deputy sheriff upon the original writ; that is, it was, in fact, a part of his return, and that the original plaintiff had the same right to use it that he had to use the writ or the return thereon. This account is not like the depositions of the party, plaintiff in review, used at a former trial, and which, perhaps, he may or may not use, as he elects, upon the trial in review, but it is a part of the service of the writ under which the officer justifies. It is not his evidence exclusively, but part of an official act, and as such appertains to the records of the court. This account was furnished to the officer, in accordance with the requirements of section 16 of chapter 184 of the Revised Statutes; Comp. Stat. 471. The officer returns that he had made demand of the mortgagee of an account under oath, &c. The mortgagee renders an account under oath, which the officer takes out of the record of another case,

and uses on the first trial of this case for the purpose of impeaching it. Failing in this, he refuses to allow it to be read, on review, for another purpose, by the other side, upon the ground that it is his evidence, and that he has the control of it; and the court sustained this claim. Now I contend that this sworn act was a part of the officer's return upon the writ under which he justifies, and that when he detaches it from the precept to which it appertains, he leaves the record, in that case, mutilated; so that it appears that the account on oath was demanded, but does not appear that any account was rendered, and indicates that the officer might hold the property attached, discharged of the mortgage; and as the record now stands, with the ruling of the court, the plaintiff is precluded from showing that he rendered an account on oath, according to the demand of the officer and the requirements of the statute. A paper of this character, thus connected with the acts of the officer, cannot be called the evidence of either party, but having been used at a former trial and filed, both parties have acquired a right to use a copy of it on review. But if this account be evidence, and not a part of the service of the writ, it is record evidence. Upon what principle can it be called exclusively the evidence of the plaintiff in review? He put it in at a former trial, to show that it was defective. It was competent for him to do so, but having so done and failed, does he divest the other side of the right to use it for other purposes? If he had taken a deposition and used it at a former trial, and refused to have it read at the trial, we could have put the witness on the stand. In other words, the other side, by using a witness once and refusing to use him again, does not thereby acquire that exclusive right to his testimony, (however it might be in regard to his deposition,) that precludes the other side from using him. Is the rule different when the evidence is in writing, and appertains to the record under which the party justifies?

If this verdict is set aside and we go to trial again, the

plaintiffs, under this ruling of the court, will be precluded from proving (though the evidence exists) that he rendered an account under oath, although the defendant proved the fact at the first trial. See 1 Foster's Rep. 175. By his own acts, the plaintiff in review withholds the account from the record to which it belongs, and the court sustain him in refusing to allow us a copy.

III. The ruling of the court that the acceptance, by Belknap, Hale and Jones, of Mugridge's draft or orders, when acceptors had no funds of the drawers, was not a valid consideration for notes of a corresponding amount, $400 and $700, rests on no sound principle, and is unsupported by authority. There is no pretence that Belknap, Hale and Jones did not pay the acceptances, or that the transaction was colorable, or in substance different from what it was in form. The court did not leave the jury to inquire whether Belknap, Hale and Jones were sureties in fact, though in form principal debtors, but instructed the jury, as matter of law, that if Belknap, Hale and Jones, without funds, undertook as principal debtors to pay a part of his creditors a *bona fide* debt, that such an undertaking did not constitute a valid consideration for notes from Mugridge to them for corresponding amounts. The court did not allow the jury to inquire what the facts were, but peremptorily instructed them that the legal inference was that the facts were different from what they appear to be on the face of the transaction; that they should not infer that Belknap, Hale and Jones became principal debtors, by accepting Mugridge's draft without funds, and taking his notes for corresponding amounts, but to infer that they were sureties, though the evidence tended to show that the notes were given wholly for a debt to the full amount. But the court not only did not allow the jury to find how the fact was, but by implication told them that if Belknap, Hale and Jones gave their acceptance to pay Mugridge's debt, and took Mugridge's note for a corresponding amount, and paid the acceptance accord-

ing to its import, yet so doing would not afford a valid consideration to uphold the mortgage, unless in addition to and independently of the above-named agreement, at or before the time of making said mortgage, another agreement was made.

IV. Of course, if the notes are valid the mortgage is valid. Yet the court instructed the jury, in effect, that if $1000 of the notes were for cash advanced, and $100 for liabilities to pay Mugridge's debt, the mortgage was void against creditors, although the parties might not have had any actual design to defraud any one. That is, the agreement to pay $100 of the debt of Mugridge is collateral in law, though absolute in fact; and although a note be given for it, it is not, and cannot be made a debt, within the meaning of the oath required by our statute, and, not being a debt, it taints ten times its own quantity $1000, of valid consideration, included in the notes with it, and renders the notes and mortgage void, in the absence of all fraud.

*Hatch*, for the original plaintiff.

BELL, J. The instructions of the court below seem to us correct. By the express provisions of the Revised Statutes, " No mortgage [of personal property] shall be valid against any person except the mortgager, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed." Rev. Stat. ch. 132, § 7; Comp. Stat. 294. By section 3 of the same chapter, the form of the oath, in case of a debt, is prescribed, and by section 4 it is provided that "if such mortgage is given to indemnify the mortgagee against any liability assumed, or to secure the fulfilment of any agreement other than for the payment of a debt due from the mortgager to the mortgagee, such liability or agreement shall be stated, truly and specifically, in the condition of the mortgage, and the affidavit shall be so varied as to

Belknap *v.* Wendell.

verify the validity, truth and justice of such liability or agreement."

The principle of these enactments was first clearly stated by the judge, and was then applied to the case in hand, which was that of the acceptance of orders, drawn by the mortgager upon the mortgagee, by stating that by those acceptances, if according to the understanding of the parties, they were absolute and to be paid by the mortgagee at all events, a debt was contracted by the mortgager to the acceptor for the amount for which the notes and mortgage might be properly given, and the mortgage was in fact what it appeared to be on its face, a security for a debt, and the condition and affidavit were in proper form. But if, in fact, the acceptances were understood by the parties as merely securities, given by the mortgagee for the debts of the mortgager, which the latter was himself to pay, though the notes might be available as indemnity notes, the mortgage would be void, because the statute requires that the true character of the claim secured, either as an absolute debt or a mere contingent liability, or special agreement, should be truly stated in the mortgage. If it is not given for a debt, but some other agreement, it must not be stated as a debt.

We do not learn from the plaintiffs' argument what is the precise point in which the instruction is supposed to be objectionable. The question relative to the validity of the mortgage is essentially distinct from any such question relating to the notes, though the counsel seem to have a different impression, as they say " Of course, if the notes are valid the mortgage is valid." On general principles, this would undoubtedly be so, and it has been often held that a mortgage of real estate, given in terms to secure the payment of promissory notes, would be a valid security, though it appeared that the notes were themselves given as collateral security, or as an indemnity, or on some other special agreement of a contingent kind. No statute regulates the manner of making such mortgages, except our statute which

prohibits mortgages of real estate for the security of future obligations or liabilities. Rev. Stat. ch. 131, § 3; Comp. Stat, 291. Independent of the statute first cited, the same rules would be applied to mortgages of personal property. And the general rule would be, as contended, that if the notes are valid, the mortgage, so far as it depends on them, is valid. But this is not so under the statute. A note, given as an indemnity or security, is valid, and a recovery may be had upon it for the amount which may be found equitably due between the parties; *Haseltine* v. *Guild,* 11 N. H. Rep. 390; even against subsequent attaching creditors. The notes, in this case, so far as any thing appears, were valid, founded on a sufficient consideration, whether they were absolute, as if given upon an exchange of obligations, or merely conditional, to indemnify the payee, if he should be required to pay his acceptances. It is, however, true, as is suggested by *Parker,* C. J., in *Haseltine* v. *Guild,* " that the plaintiffs had, upon the execution of these notes, [supposing them to be designed as an indemnity,] in fact, *no debt* against the defendant, such as appeared on the face of the notes to exist. Purporting, as it does upon its face, to be an absolute contract for the payment of the sum of money *therein* specified, and to be evidence of an existing debt to that amount, a note is objectionable, on account of the use which may be made of it to deceive other creditors, who have, ordinarily, but limited means of knowledge and proof respecting its true consideration." We, doubtless, see in this statement the reasons of the statute respecting personal mortgages, and we think it manifest that it was the intention of the Legislature to make the validity of such mortgages depend on the fact that the true character of the mortgage, as given to secure a debt, or a contingent liability, or a special agreement, should be stated in the condition and verified in the affidavit, whatever might be the form of the papers adopted, in other respects. So that though there was no legal objection to a note given as an

indemnity against a liability, still if a mortgage was given to secure such note, its true character as an indemnity, and for what, must be stated in the condition, or it will not be valid against creditors.

It can make no difference if these notes were, at the date of the mortgage, merely an indemnity, that the notes have subsequently, by the payment of the acceptances, become due absolutely, and, consequently, debts. By the express provision of the statute, the true character of the liability, as it then existed, must be stated in the condition and verified by oath, or the mortgage cannot be valid against creditors.

Neither does it make any difference that the claim secured by the mortgage is, in part, well described as a debt, if a part of the claim described as a debt is, in truth, not a debt, but a contingent liability. The statute is express that *no mortgage shall be valid* unless sworn to as prescribed. It may operate hardly, that a failure to comply with the terms of the statute, in regard to a part of the claims secured, should vitiate the whole mortgage; but this hardship cannot change the legal effect of the statute.

Actual fraud is not necessary, to avoid a mortgage for this cause; the objection is a failure to comply with the law; and this is equally decisive, whether it was intentional or otherwise.

The court below did not take the ground suggested in the argument, that an acceptance of Mugridge's orders, without funds, was not a valid consideration for notes of a corresponding amount. The question was on the validity of the mortgage, upon alleged defects existing in it, and not upon the validity of the notes. The notes might be valid thongh given as an indemnity, and might be a valid foundation for a mortgage, if described in the condition in their true character; while the mortgage might be void against creditors, if the same notes were described, not as indemnity notes, but as notes payable absolutely, that is, as debts.

In the argument, it is suggested that the court did not leave it to the jury to inquire whether Belknap, Hale and Jones were principals, as they appeared by their acceptances, or only sureties for Mugridge's debt; but instructed them that if the former accepted the orders of the latter without funds, they were accommodation acceptors, and merely sureties for Mugridge's debt, as between him and them. But after a careful examination of the instructions, we are unable to perceive any just ground of complaint in this respect. In substance, the court say that if Belknap, Hale and Jones, at a time when Mugridge had no funds in their hands, accepted orders drawn by him, their acceptances were for his accommodation, and they were his surety as between him and them; and such acceptances would not be a valid conciceration for the notes, sufficient to uphold the mortgage, since the parties have sworn that it was given to secure a debt, and for no other purpose. But if, in that case, at the time the mortgage was given, or before it was understood and agreed between the parties that such orders, so accepted, should, as between them, be their debt, and not Mugrige's, and so the object of the notes and mortgage was not to indemify, but to secure an absolute debt to the full amount of the notes, then the mortgage, if taken in good faith, would be valid. This charge seems to us to leave the question of fact, whether these notes were given as an indemnity or for a debt, fairly to the jury. If the understanding of the parties was that the company were to pay the orders at any rate, the notes and mortgage were valid; if not, the mortgage was invalid as to creditors.

The principle that the contract ordinarily implied by the law, on an acceptance for the accommodation of the drawer is, as was stated by the judge, a contract to indemnify, is stated in Chitty on Bills 317, 708, &c. It would be otherwise where bills or notes are exchanged; and whether there was an exchange of bills, and one bill was transferred,

[accepted, &c.] in consideration of the other, must be determined by the particular circumstances of such case. *Ibid.*

An exception was taken on account of the rejection of the copy of the account rendered by the mortgagees, of the amount due on their mortgage. There are many suggestions made in the argument, for which we find no color in the case sent to us; as that this account was part of an officer's return, improperly separated from the rest, and the record mutilated. Nothing of this kind appears in the case. By the case, it appears that an account rendered by the mortgagees was used at the former trial, and a copy of it was among the papers produced as the copy of the case, at the trial of the review. That the plaintiff proposed to read it, as a part of the case, but it was objected to and rejected. It seems to us this ruling was correct. It has never been understood, so far as we are aware, that a copy, though furnished with other copies in the case, can be used, if objection is made, where the original is within reach. In this case, it appeared that the original was on the files of the same court where the trial was had. In cases of controversy as to the genuineness of papers, it would materially change the burden of proof, and the position of the parties. No principle or practice is known to us which would give countenance to such a doctrine.

It does not appear clearly that this was the point relied on in support of this exception. The paper in question was an account rendered by the present plaintiff, of the amount due on his mortgage, rendered upon an application under the statute. On the former trial, it was put in evidence by the now plaintiff. The defendant now offers the copy of his own document. It was clearly evidence against him, as his own written statement, his admission of facts. As evidence in his own favor, it is, as clearly, not admissible, since a party's declarations are not, in general, evidence for himself. Some special ground of exception must be shown, to take the case out of the general rule. He may claim that

it is admissible, on the ground that the mortgagee having chosen to call upon him to state an account of his claim, under oath, is bound by such statement; or that, having used such statement as evidence, on the former trial, he has made it evidence against himself. But neither of these grounds seems to us sustainable.

It is suggested in the argument, that the call for an account was made on the mortgagee, by the defendant, as a deputy sheriff, and that the account was made part of his return on the writ, by virtue of which the demand was made; that the account would be admissible on the same ground, and between the same parties, as the residue of the return. But the case does not present these facts, and the court cannot treat them as facts because they are so stated in the argument; and, besides, if the return were taken to be evidence between these parties, it would not make this account evidence. The sheriff returns that he demanded an account, and such an account was rendered. This might well be conclusive as to the facts stated, but the officer makes no return as to the truth of the account he received, and neither he nor his employer, the plaintiff, are bound by such account.

The disclosure of one of the plaintiffs in the original suit, made by him as trustee in another case, was offered in evidence. It appeared that this disclosure was read on the former trial, and it was now taken from the files to be again used, but no copy of it was certified by the clerk, among the copies furnished by the plaintiff in review. The evidence was objected to on that account, and the plaintiff in review then asked and was allowed time to furnish such copy. Exception was taken to this order, and to the refusal of the court to order a nonsuit for the want of this copy.

It seems to us clear that this disclosure was admissible in evidence, whether a copy was certified among the papers or not. It has never been understood that evidence admissible at common law, is to be rejected on review, because it was

Belknap *v.* Wendell.

not placed on file, so that a copy might be certified with the others required to be produced by the reviewing party. The statute requires that the " party bringing any action of review shall produce attested copies of the writ, pleadings, judgment, and all papers used and filed at the former trial, otherwise a nonsuit shall be entered." Rev. Stat., ch. 192, § 8. And we think, if the party bringing the review produces the usual copies, certified by the clerk to be copies of all the papers used and filed in the case, as seems to have been done here, he will not be subject to a nonsuit because it appears that a copy of a paper known to have been used upon the former trial, is not among them. The presumption in such a case would be, that though used, it was not filed, and therefore the plaintiff in review was not bound to produce it. If it was not placed upon the files, and the party insists that it shall be filed, and a copy produced, and the court should think it proper that that should be done, we think the court had full power, and that it was a reasonable exercise of their discretion to permit that to be done, and to allow a reasonable time for the purpose.

We are unable to adopt the rigid construction of this statute provision contended for by the counsel for the defendant in review, that the copies must all be produced, and accessible to the other side, at least as early as the beginning of the trial. The statute imposes no such rigid rule, and the court has, in this case, as in others, a discretion as to the manner of conducting the trial, and ample power to suspend the proceedings, to give time to supply any casual omissions, where the substantial justice of the case seems to them to require it.

If the court were called upon to establish any imperative rule in relation to this matter of copies, instead of the rule insisted upon by the counsel, it would probably be one to require any objection on account of the want or absence of copies, to be made before the trial was commenced, and that if not then taken, the objection was waived.

The want of this copy was, at most, ground for a non-suit under the terms of the statute; it was not an objection to the evidence offered, since nothing in the statute appears designed to affect the admissibility of any paper as evidence, whether copied or not.

The exceptions, then, being overruled, there must be

*Judgment on the verdict.*